**UNITED STATES COURT OF INTERNATIONAL TRADE**

———————————————————— x

NEIMENGGU FUFENG BIOTECHNOLOGIES
CO., LTD., SHANDONG FUFENG
FERMENTATION CO., LTD., XINJIANG
FUFENG BIOTECHNOLOGIES CO., LTD.,
and FIRST BIOTECH INC.,

                     Plaintiffs,

     v.

UNITED STATES,

                     Defendant.

———————————————————— x

Court No. 26-03423

**COMPLAINT**

Plaintiffs Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.) ("Neimenggu Fufeng"), Shandong Fufeng Fermentation Co., Ltd., Xinjiang Fufeng Biotechnologies Co., Ltd. and First Biotech Inc. (collectively, "Fufeng"), by and through undersigned counsel, hereby allege and state as follows.

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. Fufeng seeks review of the final results of the U.S. Department of Commerce, International Trade Administration ("Department" or "Commerce"), decision in the eleventh administrative review ("AR11") of the antidumping duty ("ADD") order on xanthan gum from the People's Republic of China ("China") covering the period of review ("POR") spanning July 1, 2023 through June 30, 2024, published as *Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2023–2024*, 91 Fed. Reg. 43610 (July 16, 2026) ("*Final Results*").

2.     The challenged determinations, findings, and conclusions are set out primarily in the

Department's "Issues and Decision Memorandum" ("IDM") (July 8, 2026) accompanying the

*Final Results*.

## JURISDICTION

3.     This action is filed pursuant to 19 U.S.C. §§1516a(a)(2)(A)(i) and 1516a(a)(2)(B)(iii) to

contest the *Final Results* issued by the Department in AR11. This Court has jurisdiction over this

action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFFS

4.     Neimenggu Fufeng is a producer/exporter of xanthan gum from China that was selected

as a mandatory respondent in AR11. First Biotech is Neimenggu Fufeng's affiliated purchaser in

the United States. Fufeng participated in the Department's proceeding that resulted in the

challenged determination and is subject to the *Final Results*. Therefore, Fufeng is an interested

party as described in 19 U.S.C. § 1677(9)(A) and has standing to bring this action pursuant to 28

U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THE ACTION

5.     Parties to actions challenging Department determinations pursuant to 19 U.S.C.

§ 1516a(a)(2)(B)(iii) regarding administrative reviews must file the summons within 30 days of

the date of publication in the Federal Register of the final results. 19 U.S.C. § 1516a(a)(2)(A)(i).

The Department published the *Final Results* on July 16, 2026.

6.     This action was timely commenced within 30 days of the date of publication of the *Final

Results,* by the filing of a Summons on July 29, 2026. This Complaint is timely filed

concurrently with the summons. Therefore, both the Summons and the Complaint have been

timely filed in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c) and pursuant to

Rules 3(a)(2) and 6(a) of the Rules of this Court.

## **BACKGROUND**

7.    The Department issued the ADD order on xanthan gum from China on July 19, 2013. *Xanthan Gum from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 Fed. Reg. 43,143 (July 19, 2013).

8.    In the immediately preceding tenth administrative review ("AR10"), covering the POR July 1, 2022, through June 30, 2023, Commerce determined that Neimenggu Fufeng sold subject xanthan gum to First Biotech and First Biotech then resold that merchandise to its unaffiliated customers in the United States. Commerce conducted an on-site verification of First Biotech, from November 13 to 15, 2024, at the First Biotech offices in Anaheim, California.

9.    The November 2024 verification included a thorough review of First Biotech's corporate structure and organization, accounting and data systems, and sales process. Commerce verified First Biotech's quantity and value reconciliation and completeness and examined documents for five preselected sales and five surprise sales. These sales transactions showed that Neimenggu Fufeng sold xanthan gum to First Biotech. Commerce verified the entered value, customs duty and Section 301 duty applicable to these sales. Commerce ultimately concluded that Fufeng had a zero percent ADD margin in AR10. *Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2022–2023*, 90 Fed. Reg. 22,240, 22,242 (May 27, 2025).

10.    On July 31, 2024, Petitioner CP Kelco U.S., Inc. ("Petitioner"), filed its request that Commerce include Fufeng as a respondent in AR11, whose POR was from July 1, 2023 through June 30, 2024.

11.    On August 14, 2024, the Department initiated AR11 with respect to a number of

exporters of xanthan gum from China, including Fufeng. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 66,035, 66,047 (Aug. 14, 2024).

12.    Fufeng and Deosen Biochemical Ordos Ltd./ Deosen Biochemical Ltd. (collectively, "Deosen") were selected as mandatory respondents in AR11 on October 4, 2024.

13.    Fufeng filed its response to Section A of Commerce's ADD questionnaire on November 20, 2024, which discussed the business relationship between Neimenggu Fufeng and its U.S. affiliate, First Biotech, describing their transactions as sales, in the same manner as they were described as sales in AR10.

14.    On December 2, 2024, Petitioner requested an extension of time to comment on Fufeng's Section A response, which Commerce granted. Petitioner, however, never filed any comments.

15.    On March 27, 2025, Petitioner filed a complaint with Customs and Border Protection ("CBP") Trade Remedy Law Enforcement Directorate ("TRLED") branch, under the Enforce and Protect Act ("EAPA"), 19 U.S.C. 1517, alleging that First Biotech had undervalued its imports of subject merchandise purchased from Neimenggu Fufeng, resulting in evasion of the ADD Order on xanthan gum from China ("EAPA Investigation"). Petitioner's undervaluation claim did not allege that the transactions between Neimenggu Fufeng and First Biotech were not bona fide sales.

16.    On July 24, 2025, Fufeng timely filed a complete and accurate response to Commerce's supplemental Section A questionnaire, providing information directly relevant to the business relationship between Neimenggu Fufeng and First Biotech

17.    On July 31, 2025, in a consolidated EAPA Investigation numbered 8144,  TRLED provided First Biotech with notice that it had commenced an investigation based on Petitioner's allegations.

4

18.    In its EAPA Investigation Notice TRLED stated that there was sufficient information to commence the investigation. The Notice of Investigation, however, did not contain any allegation or suggestion that the transactions between Neimenggu Fufeng and First Biotech were not sales.

19.    On September 25, 2025, in the AR11 Annual Review, Fufeng responded to Commerce's September 4, 2025, second supplemental questionnaire, which again requested information on the intercompany sales process. In its response, Fufeng confirmed that "First Biotech exclusively sold subject merchandise during the POR" and provided additional detailed information regarding First Biotech's credit expenses, warehousing expenses, inventory carrying costs and indirect selling expenses. These questions and answers were based on the understanding that First Biotech purchased and resold subject merchandise. Petitioner did not comment on this submission.

20.    On November 12, 2025, in the EAPA Investigation, TRLED placed on the record five documents from Commerce's ADD proceedings: (1) Neimenggu Fufeng's Section A Response in Commerce's AR11 Annual Review spanning July 1, 2023 – June 30, 2024; (2) Neimenggu Fufeng's Section C Response in Commerce's AR11 Annual Review spanning July 1, 2023 – June 30, 2024; (3) Neimenggu Fufeng's Section A Supplemental Response in Commerce's AR11 Annual Review spanning July 1, 2023 – June 30, 2024; (4) Commerce's Verification Report of Neimenggu Fufeng- China in Commerce's AR10 Annual Review spanning July 1, 2022 – June 30, 2023; and (5) Commerce's Verification Report of First Biotech in Commerce's AR10 Annual Review spanning July 1, 2022 – June 30, 2023. These documents contained (among other information) detailed discussions, with supporting documentation, of Neimenggu Fufeng and First Biotech's transactions. In these documents, Neimenggu Fufeng and First

Biotech described their transactions as sales, and Commerce accepted these transactions as sales.

21.    In the AR11 Annual Review, Petitioner on December 11, 2025, filed with Commerce its rebuttal to Fufeng's comments in advance of the preliminary results. Petitioner did not comment on transactions between Fufeng and First Biotech.

22.    On December 16, 2025, in the EAPA investigation, First Biotech and Petitioner filed pre-decision written arguments. First Biotech's argument focused on the fact that Neimenggu Fufeng – First Biotech sales prices satisfied the cost plus profit test. Petitioner argued, for the first time in the EAPA investigation, that transactions between Neimenggu Fufeng and First Biotech were not sales.

23.    In the AR11 Annual Review, in a determination published January 9, 2026, the Department preliminarily assigned Fufeng an ADD rate of zero percent. *Xanthan Gum from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Rescission, in Part, and Preliminary Determination of No Shipments; 2023–2024*, 91 Fed. Reg. 959 (Jan. 9, 2026) ("*Preliminary Results*").

24.    In its Preliminary Decision Memorandum in the AR11 Annual Review accompanying the *Preliminary Results*, dated January 5, 2026, Commerce determined that "all of Fufeng's and Deosen's sales to be {constructed export price ('CEP') sales, in accordance with section 772(b) of the Act, because the subject merchandise was sold by affiliates of Fufeng and Deosen, respectively, in the United States to unaffiliated U.S. purchasers."

25.    On February 3, 2026, in the AR11 Annual Review, Fufeng and Petitioner filed case briefs with Commerce. In its Case Brief, Petitioner did not raise the issue as to whether Fufeng's transactions constituted sales and did not claim that Fufeng had misreported entered value, duty or inventory carrying costs.

26.     On February 10, 2026, in the AR11 Annual Review, the Department rejected Fufeng's case brief because it included untimely new factual information. Fufeng resubmitted its case brief with redactions required by the Department on February 13, 2026.

27.     On February 26, 2026, in the EAPA investigation, CBP's TRLED Branch issued its decision holding that transactions between Neimenggu Fufeng and First Biotech were not sales. TRLED relied on multiple factors as the basis of its decision, focusing on its belief that these transactions were not sales because Neimenggu Fufeng controlled the sales process.

28.     On April 9, 2026, in the EAPA investigation, First Biotech requested that CBP Headquarters reverse TRLED's decision. First Biotech argued that the factors upon which TRLED relied were not relevant to CBP's analysis as to whether the transactions between Neimenggu Fufeng and First Biotech were sales.

29.     On April 21, 2026, Commerce placed the public version of TRLED's EAPA decision on the record in the AR11 Annual Review.

30.     On May 1, 2026, Fufeng placed the EAPA record on the record in the AR11 Annual Review.

31.     On June 11, 2026, Commerce issued its Post-Preliminary Analysis in the AR11 Annual Review, applying total adverse facts available ("AFA") to Fufeng for the period April 4, 2024 through June 30, 2024, at a rate of 154.07 percent. Commerce reasoned that total AFA was required because CBP's TRLED Branch has determined that First Biotech had not reported accurate entered values for shipments entered during this three month period.

32.     On June 18, 2026, in the AR11 Annual Review, Commerce received Post-Preliminary case briefs from Fufeng, Petitioner, Deosen, Meihua Group International Trading (Hong Kong) Limited, and Inner Mongolia Jianlong Biochemical Co., Ltd.

33.    In its case brief, in the AR11 Annual Review, Fufeng raised tens issues relating to Commerce's decision to apply total AFA to three months of AR11: (1) Commerce's post-preliminary decision constitutes a dramatic, unanticipated departure from established practice; (2) the term sale is defined in the same manner for customs valuation and Commerce ADD purposes: transfer of property for a consideration; (3) Neimenggu Fufeng's transfers of xanthan gum to First Biotech are sales: transfers of property for a consideration; (4) there is no evidentiary gap in the AR11 Annual Review record justifying the application of facts available; (5) judicial precedent prohibits Commerce from relying on an adverse inference based on the facts in this case; (6) Commerce is required to provide Fufeng with the opportunity to correct the record; (7) TRLED's February 26, 2026, decision in the EAPA Investigation does not represent CBP's final decision; (8) Commerce cannot rely on AFA merely because TRLED determined that Neimenggu Fufeng did not sell xanthan gum to First Biotech; (9) Commerce's application of the 154.07 percent China-wide rate as total AFA is unlawfully punitive; and (10) Commerce should defer issuing its final decision until interested parties have had the opportunity to comment on CBP's final decision in the EAPA Investigation.

34.    Fufeng's fifth argument focused on Commerce's decision to reject all data submitted by Fufeng for three months of AR11. Fufeng argued that the courts have held that: (1) total AFA is not appropriate when that decision is speculative in light of the record, which demonstrated that the majority of the proffered price information was reliable; and (2) Commerce needs to be especially careful that it has not abused its discretion when its decision will result in rejection of all data submitted. Fufeng noted that in its Section C database, Fufeng reported 50 fields of information for each observation and these data and Section D (factors of production) data were timely filed, complete and accurate. Even assuming that TRLED's decision led to a misstatement

by Fufeng as to entered value, that error affected merely three fields in the database, and the alleged error had no impact on Fufeng's ADD margin.

35.    On June 24, 2026, Fufen, Deosen, and Petitioner submitted Post-Preliminary rebuttal case briefs in the AR11 Annual Review.

36.    On July 2, 2026, Commerce held a public hearing in the AR11 Annual Review. Fufeng's argument at the Hearing focused on the illegality of Commerce's decision to rely on total AFA for the three month period co-extensive with the EAPA investigation. Counsel argued that relying on total AFA was contrary to judicial precedent and was especially egregious since the TRLED decision effected three fields in Fufeng's 50 Field Section C database, and did not effect any information reported in the Section D database.

37.    On July 7, 2026, in the EAPA Investigation, CBP Headquarters ("HQ") affirmed TRLED's February 26, 2026 decision. CBP reasoned that "to the extent that any findings or conclusions made herein as to the proper appraisement of merchandise or otherwise are inconsistent with TRLED's findings or any instructions previously given by TRLED, this decision supersedes those findings and/or instructions."

38.    The keystone of CBP HQ's decision in the EAPA investigation was that First Biotech's payments to Neimenggu Fufeng were not in accordance with the terms outlined in the sales contracts and, in fact, First Biotech's payments were late and were interest and penalty-free.

39.    In its decision in the EAPA Investigation, CBP HQ held that transactions between Deosen Ordos and Deosen USA were sales, thereby reversing TRLED's decision that they were not. CBP based its decision on the fact that in *VWP of America, Inc*. v. United States, 175 F.3d 1327 (Fed. Cir. 1999), "the Federal Circuit affirmed CBP's finding that *bona fide* sales of fabric occurred between VWPC and VWPA despite VWPC's near-total control of VW," and despite

9

the fact that "VWPA had no U.S. offices or warehouses, carried no inventory, employed only a single employee, had only a post office box and bank account in Maine, and all of its books and records were maintained by its parent company, VWPC, in Canada."

40.    On July 8, 2026, Commerce placed CBP HQ's decision on the administrative record in the AR11 Annual Review.

41.    That same day, July 8, 2026, Commerce signed its AR11 *Final Results*, affirming its post-preliminary decision to rely on total AFA for three months of the POR, and assigning Fufeng a final AFA-based rate of 38.62 % (154.07 percent total AFA for three months and zero for nine months).

42.    Commerce's decision in the AR11 Annual Review was based on its conclusion that Fufeng "withheld information requested by Commerce pursuant to section 776(a)(2)(A) of the Act, . . . significantly impeded this proceeding pursuant to section 776(a)(2)(C) of the Act, and . . . failed to act to the best of their ability."

43.    Commerce supported its conclusion in the AR11 Annual Review with the following subsidiary findings, as set forth in the IDM: (1) Commerce relied on CBP's finding of evasion without analyzing whether that finding was correct as a matter of law because Commerce is not "obligated to ascertain the accuracy of the EAPA 8144 determination or weigh the methods, regulations, and laws relied upon by the TRLED in making the determination"; (2) it is not "necessary for Commerce to conduct a bona fide sales analysis and has not conducted such an analysis, for transactions between Deosen, Fufeng and their affiliated U.S. importers," because "Commerce's bona-fide sales test does not determine whether an importer's valuation of subject merchandise into the United States complies with United States laws and regulations related to the valuation of imported goods"; (3) "CBP's notice of determination as to evasion, constituted a

final determination," notwithstanding the fact that the TRLED determination was being appealed to CBP HQ; (4) Fufeng's "arguments that EAPA 8144 does not reflect CBP's final decision because the decision is subject to a *de novo* review by CBP headquarters . . . {are}. . . moot . . . {because}. . . on July 8, 2026, CBP announced the results of its *de novo* review in which CBP headquarters determined that the transactions between Fufeng and First Biotech "did not constitute *bona fide* sales"; (5) "Based on CBP's finding of undervaluation, Commerce finds the record lacks the average unit entered value on a specific model basis for subject merchandise that entered the customs territory of the United States on or after April 4, 2024 . . . and which were later sold to U.S. customers during the POR; (6) Fufeng has "withheld the actual United States customs value during the POR for those specific product models that entered the customs territory of the United States on or after April 4, 2024, which were later sold during the POR;" (7) Fufeng "significantly impeded the proceedings" because "CBP determined the entered value of subject merchandise was lower than it should have been, meaning the duties payable to CBP, were substantially lower than those payable of properly valued entries" which in turn "artificially lowered Commerce's deduction of attributable import duties from the U.S. price, which is used in created a weighted-average dumping margin for individually examined respondents"; (8) Fufeng "significantly impeded the proceedings . . . by provided underreported U.S. selling expenses" in the field for "inventory carrying costs"; (9) "CBP's determination of entry value undervaluation impugns any calculation reliant on the entered value reported to CBP on or after April 4, 2024. Thus, Commerce is unable to calculate an accurate importer specific assessment rate"; (10) "Commerce finds the entered value following CBP's proposed upward adjustment does not represent the United States customs value of subject merchandise on a sales-specific basis, which is the information that Commerce requires to perform its calculations.

11

Therefore, Commerce continues to find necessary information is absent from the record"; (11) "Commerce had no reason to think Deosen and Fufeng had undervalued their custom entries, leading to an incorrect calculation of their United States import duties and certain United States selling expenses until Commerce placed EAPA 8144 on the record" and "{i}t is the respondent's responsibility to populate the record with complete and accurate responses to Commerce's requests for information, and section 782(d) of the Act does not oblige Commerce to inquire about information it does not know exists"; (12) "Commerce's practice in reviews is to use the highest rate on the record of the proceeding, which, to the extent practicable, can be corroborated"; (13) "Commerce disagrees it needs to corroborate its assigned, AFA rate of 154.07 percent, which it applied to all sales of Deosen and Fufeng comprising subject merchandise which entered the customs territory of the United States on or after April 4, 2024"; (14) "Commerce cannot identify anything in CBP's findings that discredits Commerce's understanding of the role played by the Fufeng and Deosen's affiliates in selling subject merchandise in the United State"; and (15) deferring the Final Results pending CBP's final decision "is moot" because "CBP's *De Novo* EAPA Review of EAPA 8144 left unchanged its overarching conclusion that the actions of Deosen and Fufeng resulted in the undervaluation of their entered values and the evasion of the *Order*."

44.     On July 12, 2026, at 9:28 PM, Fufeng filed a letter with Commerce in the AR11 Annual Review requesting that the agency "allow parties to file comments on New Factual Information ("NFI") which Commerce placed on the record in the above-referenced Annual Review ("AR11") on July 8, 2026 (CBP HQ's EAPA decision) and hold a public hearing to discuss the issues raised." Fufeng noted that the CBP HQ decision relied on a significantly different rationale than the TRLED decision.

12

45. On July 13, 2026, at 9:25 AM, Commerce released its July 8, 2026 decision to the public by publishing that decision on the ACCESS website.

## STATEMENT OF CLAIMS

## COUNT ONE

46. Paragraphs 1 to 45 are adopted, incorporated and re-alleged here by reference.

47. Substantial evidence on the record shows that the transactions between Neimenggu Fufeng and First Biotech were bona fide sales.

48. There is no substantial evidence on the record that the transactions between Neimenggu Fufeng and First Biotech were not bona fide sales.

49. Commerce's decision to rely on CBP's decision that the transactions between Neimenggu Fufeng and First Biotech were not bona fide sales is not based on substantial evidence on the record and is contrary to law.

## COUNT TWO

50. Paragraphs 1 to 49 are adopted, incorporated and re-alleged here by reference.

51. Commerce's decision to blindly rely on CBP's finding of evasion without independently analyzing whether Neimenggu Fufeng transactions with First Biotech were bona fide sales is not supported by substantial evidence on the record and is contrary to law.

## COUNT THREE

52. Paragraphs 1 to 51 are adopted, incorporated, and re-alleged here by reference.

53. Commerce's decision that TRLED's decision constituted a final determination, notwithstanding the fact that TRLED determination was being appealed to CBP HQ, is not supported by substantial evidence on the record and is contrary to law.

## COUNT FOUR

13

54.    Paragraphs 1 to 53 are adopted, incorporated, and re-alleged here by reference.

55.    Commerce's decision that the record lacked evidence as to the entered value of subject merchandise is not supported by substantial evidence on the record and is contrary to law.

## COUNT FIVE

56.    Paragraphs 1 to 55 are adopted, incorporated, and re-alleged here by reference.

57.    Commerce's decision that Fufeng "withheld the actual United States customs value during the POR for those specific product models that entered the customs territory of the United States on or after April 4, 2024, which were later sold during the POR" is not supported by substantial evidence on the record and is contrary to law.

## COUNT SIX

58.    Paragraphs 1 to 57 are adopted, incorporated, and re-alleged here by reference.

59.    Commerce did not request that Fufeng submit revised entered value data during the course of AR11.

60.    Commerce did not advise Fufeng that Fufeng should have submitted revised entered value data until Commerce published its final IDM.

61.    Assuming that the record did not contain evidence as to the entered value of subject xanthan gum as determined by CBP, Commerce's decision to rely on total AFA without advising Fufeng of the absence of such evidence in the record and its failure to provide Fufeng with the opportunity to cure the defect is not supported by substantial evidence on the record, is directly contrary to 19 U.S.C. 1677m, and is contrary to law.

## COUNT SEVEN

62.    Paragraphs 1 to 61 are adopted, incorporated, and re-alleged here by reference.

63.    Insofar as the record in AR11 contained all information required for Commerce to

calculate Fufeng's entered value, there is no gap in the record.

64.    Because there is no gap in the record, Commerce's decision to rely on facts available to calculate Fufeng's entered value is not supported by substantial evidence on the record and is contrary to law

## COUNT EIGHT

65.    Paragraphs 1 to 64 are adopted, incorporated, and re-alleged here by reference.

66.    Commerce's conclusion that Fufeng "significantly impeded the proceedings" because the reported entered value subject merchandise was lower than it should have been, resulting in the inaccurate reporting of duty paid and inventory carrying costs is not supported by substantial evidence on the record and is contrary to law.

## COUNT NINE

67.    Paragraphs 1 to 66 are adopted, incorporated, and re-alleged here by reference.

68.    Commerce reasoned that Commerce had "no reason to think that Fufeng had undervalued their custom entries . . . until Commerce placed EAPA 8144 on the record" and that the law "does not oblige Commerce to inquire about information it does not know exists."

69.    Commerce reasoned that Fufeng "significantly impeded the investigation" and "did not act to the best of its ability" because the reported entered value of subject merchandise was lower than it should have been.

70.    Commerce reasoned that Fufeng correctly reported to Commerce that transactions between Neimenggu Fufeng transaction with First Biotech were bona fide sales for purposes of the antidumping duty law.

71.    Commerce's decision to rely on total adverse facts available because Fufeng undervalued merchandise when Commerce had no reason to believe the merchandise was undervalued, and

when Commerce believed that Neimenggu Fufeng transactions with First Biotech were bona fide sales under the antidumping duty law is not supported by substantial evidence on the record and is contrary to law

## COUNT TEN

72. Paragraphs 1 to 71 are adopted, incorporated, and re-alleged here by reference.

73. Commerce's conclusion that an AFA rate of 154.07 percent should apply based on the facts in this case is not supported by substantial evidence on the record and is contrary to law

## COUNT ELEVEN

74. Paragraphs 1 to 73 are adopted, incorporated, and re-alleged here by reference.

75. Except for entered value, duty and ICC data for three months of AR11, Commerce accepted as accurate all data submitted by Fufeng; that is, Section D data for the entire AR11, Section C data for nine months of AR11, and Section C data except for entered value, duty and ICC for three months of AR11.

76. In its IDM, Commerce did not address Fufeng's primary argument, that regardless of whether Fufeng misreported entered value, that alleged error did not constitute sufficient reason for Commerce to rely on total AFA, and to reject all of the other timely filed, complete and accurate data reported by Fufeng.

77. Commerce's failure to address Fufeng's primary argument in its IDM is not supported by substantial evidence on the record and is contrary to law.

78. Commerce's reliance on total AFA for three months of AR11 is not supported by substantial evidence on the record and is contrary to law.

## COUNT TWELVE

79. Paragraphs 1 to 78 are adopted, incorporated, and re-alleged here by reference.

80. CBP HQ's final EAPA decision that Neimenggu Fufeng transactions with First Biotech were not bona fide sales was based on a different rationale than TRLED's preliminary EAPA decision that these transactions were not bona fide sales.

81. Commerce's refusal to provide Fufeng with the opportunity to file a Case Brief contesting the impact of CBP's final EAPA decision on Commerce's Final Decision in AR11, and to participate in a Hearing discussing CBP's final decision is not supported by substantial evidence on the record and is contrary to law.

## COUNT THIRTEEN

82. Paragraphs 1 to 81 are adopted, incorporated, and re-alleged here by reference.

83. CBP's EAPA investigation and AR11 were conducted contemporaneously.

84. Petitioner in AR11 fully participated in CBP's EAPA investigation.

85. Commerce placed TRLED's preliminary EAPA decision and CBP HQ's final EPA decision on the record in AR11.

86. In light of Petitioner and Commerce's actual knowledge of CBP's EAPA investigation, Commerce's conclusion that Fufeng had the burden to advise Commerce that CBP had rejected Fufeng's entered value, thereby justifying reliance on total AFA, is not supported by substantial evidence on the record and is contrary to law

## COUNT FOURTEEN

87. Paragraphs 1 to 86 are adopted, incorporated, and re-alleged here by reference.

88. Petitioner fully participated in CBP's EAPA investigation, but did not argue that Fufeng misreported entered value in its Case Brief filed on February 3, 2026, notwithstanding that Petitioner's EPA complaint was based on that allegation, and that on December 16, 2025, Petitioner, in the EAPA investigation, alleged that the Neimenggu Fufeng transactions with First

Biotech were not bona fide sales.

89.    Insofar as Petitioner did not allege in its Case Brief that Fufeng misreported entered value Commerce's decision to rely on total AFA in AR11 because Fufeng misreported entered value is not supported by substantial evidence on the record and is contrary to law.

## COUNT FIFTEEN

90.    Paragraphs 1 to 89 are adopted, incorporated, and re-alleged here by reference.

91.    In light of the record in AR11, Commerce's decision to rely on total AFA for Fufeng sales in the final three months of AR11 is not supported by substantial evidence on the record and is contrary to law.

## PRAYER FOR RELIEF

WHEREFORE, Fufeng requests that this Court:

(a)    hold that Commerce's *Final Results* are unsupported by substantial evidence and are otherwise not in accordance with law;

(b)    remand the *Final Results* with instructions to issue a new determination consistent with this Court's decision; and

(c)    provide such other and further relief as this Court deems just and proper.

Respectfully submitted,

Ned H. Marshak*
Jordan C. Kahn
Brandon M. Petelin
Elaine F. Wang
Sarah E. Raymond*

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

*599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000

\*\*
1201 New York Ave., NW, Ste. 650
Washington, DC 20005
(202) 783-6881

*Counsel to Plaintiffs Neimenggu Fufeng
Biotechnologies Co., Shandong Fufeng
Fermentation Co., Ltd., Xinjiang Fufeng
Biotechnologies Co., Ltd., and First Biotech
Inc.*

Dated:  July 29, 2026